IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

DEC 21 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA, )
U.S. Department of Justice )
Environment and Natural )
  Resources Division )
10th & Pennsylvania Ave., N.W. )
Washington, D.C. 20530 )

    Plaintiff, )

    v. )

DAIMLERCHRYSLER CORPORATION )
1000 Chrysler Dr. )
Auburn Hills, MI 48326 )
 )
    Defendant. )

CASE NUMBER   1:05CV02440

JUDGE: Reggie B. Walton

DECK TYPE: General Civil

DATE STAMP: 12/21/2005

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

### NATURE OF ACTION

1.    This is a civil action brought pursuant to Sections 203, 204 and 205 of the Clean Air Act ("the Act"), 42 U.S.C. §§ 7522, 7523 and 7524, for injunctive relief and the assessment of civil penalties against defendant DaimlerChrysler Corporation (formerly Chrysler Corporation and referred to herein as "Chrysler") for violations of the Act and regulations promulgated thereunder.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of and the parties to this action pursuant to Sections 204 and 205 of the Act, 42 U.S.C. §§ 7523 and 7524, and 28 U.S.C. §§ 1331, 1345, and 1355.

3. Venue is proper in this jurisdiction pursuant to Sections 204 and 205 of the Act, 42 U.S.C. §§ 7523 and 7524, because the Administrator has his principal place of business here.

## DEFENDANT

4. Defendant Chrysler is incorporated under the laws of the State of Delaware, does business in all 50 states and the District of Columbia, is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e), and is a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1).

5. At all times relevant to this action, defendant Chrysler was engaged in the business of manufacturing and selling new motor vehicles in the United States, including the vehicles identified in Table 1 to this Complaint.

## STATUTORY AND REGULATORY BACKGROUND

6. This action arises under Title II of the Act, as amended, 42 U.S.C. § 7521 et seq., and the regulations promulgated thereunder, relating to the requirement that a manufacturer report emission related defects in its vehicles to EPA.

7. Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), prohibits any person from failing or refusing to make reports or provide information to EPA pursuant to Section 208 of the Act, 42 U.S.C. § 7542.

8. Section 208(a) of the Act, 42 U.S.C. § 7542(a), requires every manufacturer of new motor vehicles to establish and maintain records, perform testing, make reports, and provide information as EPA may reasonably require to determine whether the manufacturer has acted or is acting in compliance with Part A of Title II of the Act.

9. EPA has promulgated regulations requiring manufacturers to report to EPA emission-related defects in new motor vehicles. 40 C.F.R. § 85.1903(b) requires a manufacturer of new motor vehicles to file an emissions defect information report ("EDIR") with EPA within 15 working days after the manufacturer determines: (1) in accordance with the procedures established by the manufacturer to identify safety related defects pursuant to the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1381 et seq., as amended (currently codified at 49 U.S.C. § 30101 et seq.), that a specific emission-related defect exists; and (2) that the specific emission-related defect exists in twenty-five or more vehicles of the same model year.

10. Pursuant to 49 U.S.C. § 30118(c), a manufacturer is required to notify the Secretary of Transportation if the manufacturer: "(1) learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety; or (2) decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standard prescribed under the chapter." The "good faith" component of the notification requirement allows the manufacturer to determine if a defect has occurred through several sources, including but not limited to: in-house studies, warranty claims submitted by dealers, other information supplied by dealers or purchasers, or governmental findings that equipment contains a defect. The obligation to submit an EDIR arises, however, when the manufacturer determines, or should have determined, that its vehicles have an emission-related defect.

11.     An "emission-related defect" is defined by 40 C.F.R. § 85.1902(b) as "a defect in design, materials, or workmanship in a device, system, or assembly described in the approved Application for Certification (required by 40 C.F.R. § 86.077-22 and like provisions of Part 85 and Part 86 of Title 40 of the Code of Federal Regulations) which affects any parameter or specification enumerated in Appendix VIII [to 40 C.F.R. Part 85]." Appendix VIII includes, among other things, the "catalytic converter system." 40 C.F.R. Part 85, Appendix VIII, Part A, Subpart VII, Item 3. Manufacturers submit an Application for Certification to EPA to obtain a "Certificate of Conformity" pursuant to Section 206(a)(1) of the Act, 42 U.S.C. § 206(a)(1), allowing the sale in the United States of motor vehicles or motor-vehicle engines covered by the Certificate.

12.     Pursuant to 40 C.F.R. § 85.1901, the obligation to file an EDIR affecting a given class or category of vehicles remains applicable for five years from the end of the model year in which the vehicles were manufactured. Pursuant to 40 C.F.R. § 1904(b), items of information required to be included in an EDIR that are either not available at the time of filing or are significantly revised shall be submitted as they become available.

## GENERAL ALLEGATIONS

**Subject Vehicles**

13.     Chrysler has sold, offered for sale, or introduced or delivered for introduction into commerce new model-year 1996 through model-year 2001 motor vehicles in the United States (the "Subject Vehicles"). Table 1 to this Complaint sets forth each class or category of the Subject Vehicles.

14.     Chrysler sold over 2.3 million of the Subject Vehicles in the United States.

15. Each of the Subject Vehicles was equipped with a catalytic converter, a device installed in the exhaust system of an internal combustion engine to control emissions. Chrysler's catalytic converters are typical of the automobile industry in that they consist of a metallic can or shell containing a core material, or "brick," coated with precious metals that store or release nitrogen or oxygen atoms, causing reactions that reduce emissions of pollutants including hydrocarbons, carbon monoxide, and oxides of nitrogen. The brick is held in place inside the can by a mat intended to protect the brick from movement and friction during vehicle operations. A significant percentage of the catalytic converters installed on the Subject Vehicles have an emission-related defect (the "Catalyst Defect") relating to the failure of the mat to secure the brick adequately, resulting in abrasion of the mat and brick and degradation or failure of the converters' emission-control efficacy.

16. Since at least 1994, Chrysler has been aware that catalytic converters on its Jeep vehicles were experiencing unusually high warranty claim rates. In May 1994, Chrysler's internal "Emission Warranty Summary Report" for the quarter ending March 31, 1994, disclosed that model year 1991 Jeep Cherokees, Wagoneers, and Wranglers equipped with 2.5 liter engines were experiencing catalytic converter failures on at least 14 percent of vehicles.

17. On February 5, 1996, Chrysler filed EDIR # 680/681 with EPA, disclosing with respect to "certain 1991 through mid-1995 [model year] Jeep models (Federal and California) equipped with a 2.5L engine" that "[t]he catalytic converter may fail due to thermal expansion of the catalyst can, the subsequent erosion of the mat surrounding the [brick] and the eventual [brick] deterioration."

18.	On October 23, 1998, Chrysler filed EDIR # 98-11 for "certain 1993 and subsequent [model year] Jeep Wrangler models equipped with 2.5 and 4.0L engines" and on December 4, 1998, Chrysler submitted EDIR # 98-13 for "certain 1994 and subsequent [model year] Dodge Ram Pick-up models equipped with 3.9, 5.2, 5.9 and 8.0L engines." Both reports indicate that affected vehicles' "catalyst[s] may fail due to the deterioration of the intumescent mat used to secure the [brick] within the exterior metal clamshell."

19.	At various times from 1996 through 2001, Chrysler determined or should have determined from dealer warranty claims, internal warranty claims analyses, engineering studies, testing, and its knowledge of the defect described in EDIR ## 680/681, 98-11, and 98-13, that 25 or more vehicles in each of the several model years and classes or categories of Subject Vehicles also had the Catalyst Defect.

20.	Despite the fact that it determined or should have determined that the Catalyst Defect existed in each class or category of the Subject Vehicles, Chrysler failed to file an EDIR with respect to any of these classes or categories. In addition, despite receiving additional information regarding the extent of the Catalyst Defect on Subject Vehicles from dealer warranty claims and other sources after Chrysler initially determined or should have determined the existence of the Catalyst Defect on each class or category of Subject Vehicle, Chrysler, failed to provide EPA with updated information regarding the Subject Vehicles, despite the continuing obligation to update imposed by EPA's emission-related defect reporting rules.

21.	Chrysler's failure to file EDIRs with respect to the several classes or categories of Subject Vehicles, and its failure to provide EPA with updated information regarding the

emission-related defect on the Subject Vehicles, prevented EPA from taking timely action to address the Catalyst Defect and the associated environmental consequences of such defect.

**CLAIM FOR RELIEF**
**(Clean Air Act Section 203(a)(2)(A):  Failure**
**to File EDIRS Regarding the Subject Vehicles)**

22.   Plaintiff realleges paragraphs one through 21 above as if fully set forth herein.

23.   Chrysler sold, offered for sale, or introduced or delivered for introduction into commerce, motor vehicles, including the Subject Vehicles.

24.   An emission related defect, as defined by 40 C.F.R. § 85.1902(b), exists in 25 or more of each class or category of the Subject Vehicles.

25.   Chrysler determined or should have determined, at times from 1996 through 2001, the existence of the Catalyst Defect on each class or category of the Subject Vehicles.

26.   Despite the fact that Chrysler determined, or should have determined, the existence of the Catalyst Defect on each class or category of the Subject Vehicles, Chrysler did not file an EDIR with EPA regarding any class or category of Subject Vehicles, in violation of Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), and EPA's emission-related defect reporting regulations promulgated thereunder; and Chrysler did not submit to EPA any updated information regarding the Catalyst Defect on any class or category of Subject Vehicles when it became available.

27.   Pursuant to Sections 204(a) of the Act, 42 U.S.C. § 7523, Chrysler is liable for injunctive relief for each violation of Section 203(a)(2) alleged above; and pursuant to Section 205(a) of the Act, 42 U.S.C. § 7524(a), Chrysler is liable for civil penalties for each separate

violation of Section 203(a)(2) alleged above, and for each and every day such separate violations continued.

## PRAYER FOR RELIEF

Wherefore, plaintiff, the United States of America, respectfully demands judgment against defendant, DaimlerChrysler Corporation, as follows:

A.  Permanently enjoining DaimlerChrysler Corporation from failing or refusing to file with EPA an EDIR within fifteen days of determining, in good faith, that a specific emissions-related defect exists and that such defect exists in twenty-five or more vehicles of the same model year;

B.  Ordering DaimlerChrysler Corporation to take appropriate action to remedy the violations of Sections 203(a)(2)(A) of the Act, 42 U.S.C. § 42 U.S.C. § 7522(a)(2)(A), alleged above;

C.  Assessing civil penalties, pursuant to Section 205(a) of the Act, against DaimlerChrysler Corporation for each violation of Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), alleged above of up to: $25,000 per day per violation occurring prior to January 30, 1997; and, pursuant to the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, codified as amended at 40 C.F.R. Part 19, $27,500 per day per violation occurring on or after January 30, 1997 but prior to March 15, 2004, and $32,500 per day per violation occurring on or after March 15, 2004; and

F.      Granting such other and further relief as the Court deems just and proper.


_____
SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resource Division


_____
THOMAS P. CARROLL, DC Bar # 388593
Senior Attorney
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611
Washington, D.C., 20044
(202) 514-4051

KENNETH L. WAINSTEIN
United States Attorney
District of Columbia

By: *[signature]*

R. CRAIG LAWRENCE, D.C. Bar. # 451058
Civil Chief
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20001
(202) 514-7151

*[signature]*

KEITH V. MORGAN, D.C. Bar # 422665
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20001
(202) 514-7228

OF COUNSEL:
Jacqueline Robles Werner
Attorney/Advisor, Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Table 1 – List of Subject Vehicle Classes or Categories

| Model Year | Displacement (Liters) | Model (Engine Code) | Name |
|---|---|---|---|
| 1996 | 2.5 | AN (EPE) | Dakota Pickup Truck |
| | | XJ (EPE) | Jeep Cherokee |
| | 3.9 | AB (EHC) | Ram Van/Wagon |
| | | AN (EHC) | Dakota Pickup Truck |
| | 4.0 | ZJ (ERH) | Pre-99 Jeep Cherokee |
| | | XJ (ERH) | Jeep Cherokee |
| | 5.2 | AB (ELF+ELN) | Ram Van/Wagon |
| | | AN (ELF+ELN) | Dakota Pickup Truck |
| | | ZJ (ELF) | Pre-99 Jeep Cherokee |
| | 5.9 | AB (EML) | Ram Van/Wagon |
| 1997 | 2.5 | AN (EPE) | Dakota Pickup Truck |
| | | XJ (EPE) | Jeep Cherokee |
| | 3.9 | AB (EHC) | Ram Van/Wagon |
| | | AN (EHC) | Dakota Pickup Truck |
| | 4.0 | ZJ (ERH) | Pre-99 Jeep Cherokee |
| | | XJ (ERH) | Jeep Cherokee |
| | 5.2 | AB (ELF) | Ram Van/Wagon |
| | | AN (ELF) | Dakota Pickup Truck |
| | | ZJ (ELF) | Pre-99 Jeep Cherokee |
| | 5.9 | AB (EML) | Ram Van/Wagon |
| 1998 | 2.5 | AN (EPE) | Dakota Pickup Truck |
| | | XJ (ERH) | Jeep Cherokee |
| | 3.9 | AB (EHC) | Ram Van/Wagon |
| | | AN (EHC) | Dakota Pickup Truck |
| | 4.0 | XJ (ERH) | Jeep Cherokee |
| | | ZJ (ERH) | Pre-99 Jeep Cherokee |
| | 5.2 | AB (ELF) | Ram Van/Wagon |
| | | AN (ELF) | Dakota Pickup Truck |
| | | ZJ (ELF) | Pre-99 Jeep Cherokee |
| | 5.9 | AB (EML) | Ram Van/Wagon |
| | | AN (EML) | Dakota Pickup Truck |
| | | ZJ (EML) | Pre-99 Jeep Cherokee |

| | | | |
|---|---|---|---|
| 1999 | 2.5 | AN (EPE) | Dakota Pickup Truck |
| | 3.9 | AB (EHC)) | Ram Van/Wagon |
| | | AN (EHC) | Dakota Pickup Truck |
| | | BR (EHC) | Ram Pickup Truck |
| | 5.2 | AB (ELF+ELN) | Ram Van/Wagon |
| | | AN (ELF) | Dakota Pickup Truck |
| | | BR, BE (ELF) | Ram Pickup Truck |
| | 5.9 | AB (EML) | Ram Van/Wagon |
| | | AN (EML) | Dakota Pickup Truck |
| | | BR, BE (EML+EMM) | Ram Pickup Truck |
| 2000 | 5.9 | EML-BR,BE | H.D. Dodge Ram Pickup Tr. |
| | 8 | BR,BE | Heavy-Duty Dodge Ram Pickup Truck |
| 2001 | 5.9 | BR,BE (EML) | Heavy-Duty Dodge Ram Pickup Truck |
| | 8 | BR,BE | Heavy-Duty Dodge Ram Pickup Truck |