IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 1:05CV02440-RBW |
| Plaintiff, ) | |
| ) | |
| ) | |
| ) | |
| DAIMLERCHRYSLER CORPORATION ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO ENTER CONSENT DECREE**

**INTRODUCTION**

The United States has moved for entry of the Consent Decree with defendant DaimlerChrysler Corporation ("Chrysler"), lodged with the Court on December 21, 2005. The proposed Decree resolves the United States' claims in the Complaint against DaimlerChrysler Corporation ("Chrysler") for injunctive relief and civil penalties under the Clean Air Act, as amended, 42 U.S.C. § 7401 et seq. (the "Act"), arising from the company's alleged failure to file emission-defect information reports with the U.S. Environmental Protection Agency ("EPA") with respect to certain model year 1996-2001 Jeep, Dodge Ram, and Dodge Dakota vehicles equipped with potentially defective catalytic converters (the "Catalyst Defect").

The proposed Consent Decree settles these claims through Chrysler's agreement to pay $1 million in civil penalties, to perform a supplemental environmental project at a cost of not less than $3 million, and to implement enhanced emission-related defect reporting procedures. The Consent Decree also includes remedial provisions to address certain emission-related defects, including extending the warranty covering repair of the Catalyst Defect and a recall to correct a separate defect in the computer-based on-board diagnostic system in certain Chrysler

vehicles, resolving potential EPA administrative claims with respect to these defects. Pursuant to 28 C.F.R. § 50.7, notice of the Consent Decree was published in the Federal Register on January 5, 2006, 71 Fed. Reg. 618-01. The United States received no comments in response to the Federal Register notice.

For the reasons set forth below, the proposed decree is fair, reasonable and consistent with the statutory scheme of Title II of the Clean Air Act, 42 U.S.C. §§ 7521 - 7589, and in the public interest. Accordingly, the United States respectfully requests that this Court approve, sign, and enter the Consent Decree.

## BACKGROUND

**A.     EMISSION DEFECT INVESTIGATION AND REPORTING**

Title II of the Act addresses emissions from "mobile sources," including motor vehicle emission and fuel standards which are covered by Part A at 42 U.S.C. § 7521 et seq. New motor vehicles or motor vehicle engines cannot lawfully be sold in the United States unless a "certificate of conformity" has been issued by EPA and is in effect for the vehicle or engine. Section 203(a) of the Act, 42 U.S.C. § 7522(a). To obtain a certificate of conformity, EPA requires that a manufacturer test a prototype of the vehicle or engine to determine if the new motor vehicle or engine meets the applicable emissions standards. Section 206(a) of the Act, 42 U.S.C. § 7525(a).

Manufacturers of motor vehicles, such as Chrysler, have continuing obligations after obtaining a certificate of conformity. Manufacturers are required to warrant to the ultimate purchaser that new motor vehicles are: (i) designed, built, and equipped to conform to the applicable emission standards at the time of sale, and (ii) free from defects that would cause the

motor vehicle to fail to conform to such standards during its statutory "useful life." Section 207(a)(1) of the Act, 42 U.S.C. § 7541(a)(1). Should a vehicle fail an emission test, such as state smog check or pollution inspection, during the warranty period, the manufacturer is required to repair the vehicle, at no cost to the owner, to ensure that it conforms to the applicable emission standards. Section 207(h) of the Act, 42 U.S.C. § 7541(h).

> Manufacturers are also required by Section 208(a) of the Act, 42 U.S.C. § 7542(a), to:
>
> establish and maintain records, perform tests . . ., make reports, and provide information the Administrator may reasonably require to determine whether the manufacturer . . . has acted or is acting in compliance with this part and part C of this subchapter and regulations thereunder. . . .

42 U.S.C. § 7542(a). EPA has promulgated regulations implementing Section 208(a) of the Act which are codified at 40 C.F.R. §§ 85.1901 - 1909. In particular, a manufacturer is required to file an emission defect information, or "EDIR," with EPA within 15 business days after a manufacturer determines: (i) in accordance with the procedures established by the manufacturer to identify safety related defects pursuant to the National Traffic and Motor Vehicle Safety Act that a specific emission-related defect exists;[1] and (ii) that the specific emissions-related defect

---

[1] Pursuant to the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30118(c), a manufacturer is required to notify the Secretary of Transportation if the manufacturer: "(1) learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety; or (2) decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standard prescribed under this chapter." The "good faith" component of the notification requirement allows the manufacturer to determine if a defect has occurred through several sources. These sources include, but are not limited to: in-house studies, information supplied by purchasers and dealers, or the Secretary of Transportation's finding that the equipment contains a defect. United States v. General Motors Corp., 518 F.2d 420, 426 (D.C. Cir. 1975). Thus, "[w]hether a defect exists in a particular case thus turns on the nature of the component involved, the circumstances in which the failures occurred, and the number of failures experienced." Id. at 427.

exists in twenty-five or more vehicles of the same model year.  See 40 C.F.R. § 85.1903.

**B.    ALLEGATIONS IN THE COMPLAINT**

As set forth in the Complaint, Chrysler manufactured and sold approximately 2.3 million vehicles, including model year 1996-1999 Jeep Wranglers, Cherokees, and Grand Cherokees, 1996-1999 Dodge Dakota Trucks, and 1996-2001 Dodge Ram Pickup Trucks, Vans, and Wagons (the "Catalyst Subject Vehicles" – listed in Table 1 to the Complaint") with the potential to develop an emission-related defect (the "Catalyst Defect").  Each of the Catalyst Subject Vehicles is equipped with a catalytic converter, a device installed in the exhaust system of an internal combustion engine to control emissions.  Chrysler's catalytic converters are typical of the automobile industry in that they consist of a metallic can or shell containing a core material, or "brick," coated with precious metals that store or release nitrogen or oxygen atoms, causing reactions that reduce emissions of pollutants including hydrocarbons, carbon monoxide, and oxides of nitrogen.   The brick is held in place inside the can by a mat intended to protect the brick from movement and friction during vehicle operations.  The Complaint alleges that a significant percentage of the catalytic converters installed on the Catalyst Subject Vehicles will develop the Catalyst Defect.  The defect develops due to the failure of the mat to secure the brick adequately, resulting in abrasion of the mat and brick and degradation or failure of the converters' emission-control efficacy.

The Complaint alleges that, at various times between 1996 and 2001, Chrysler determined or should have determined the existence of the Catalyst Defect on more than 25 of each the several classes or categories of Catalyst Subject Vehicles, but failed to file EDIRs with EPA regarding any of the Catalyst Subject Vehicles, in violation of Section 203(a)(2)(A) of the

Act, 42 U.S.C. § 7522(a)(2)(A).  Pursuant to Sections 204(a) and 205(a) of the Act, 42 U.S.C. §§ 7523 and 7524, the Complaint seeks injunctive relief and civil penalties for each violation of Section 203(a)(2)(A) alleged.

**C.     THE ON-BOARD DIAGNOSTIC SYSTEM DEFECT**

In addition to, and separate from, the Catalyst Defect, the proposed Consent Decree addresses another defect discovered on a subset of the Catalyst Subject Vehicles comprised of Chrysler model year 1996, 1997, and 1998 Jeep Cherokee, Grand Cherokee, Wrangler, and Dodge Dakota vehicles, approximately 500,000 in all (the "OBD Subject Vehicles").  Since 1994, Chrysler, like all manufacturers of automobiles for the U.S. market, has been required to equip its vehicles with computer-based on-board diagnostic ("OBD") systems to detect conditions, like catalyst failure, that are known to cause increased emissions.  See 40 C.F.R. 86.094-17.  For model years 1995 through 1998, EPA deems compliance with California's OBD regulations (known as "OBD II," because they supercede the initial, 1994 OBD rules) to be compliance with the federal OBD requirements.  40 C.F.R. § 86.094-17(j).  Under the OBD II regulations, Chrysler's vehicles were required to have an OBD system capable of detecting elevated emissions from the vehicle at levels 1.5 times the applicable emission standard (the "OBD threshold") and to illuminate the malfunction indicator light or "MIL" (commonly called the "check engine light") when such exceedances occur.

In October 2000, EPA became aware of certain 1996 Dodge vehicles that had failed a State's vehicle emissions inspection and maintenance ("I&M") check because the vehicles had empty catalyst cans and were exceeding the OBD threshold.  Despite the threshold exceedance on these vehicles, the OBD system had not illuminated the MIL.  An ensuing investigation

confirmed the existence of the OBD Defect on the OBD Subject Vehicles, i.e., the inability of the OBD system on these vehicles to detect exceedances of the OBD threshold. Although the Complaint does not include claims relating to the OBD Defect – due to the timing of the discovery, and the subsequent confirmation through EPA and Chrysler testing, of the existence of the OBD Defect –[2] the inclusion of remedy provisions in the Consent Decree for this defect avoids the need for possible separate administrative action by EPA to address this issue.[3]

**C.     THE CONSENT DECREE**

The Consent Decree provides injunctive relief – described in detail below – to remedy the Catalyst and OBD Subject Vehicles and to enhance Chrysler's emissions-related defect reporting practices, imposes $1 million in civil penalties, and requires Chrysler to implement a supplemental environmental project at a cost of at least $3 million to retrofit older, higher emitting non-road diesel engines with new, cleaner technology.[4]

---

[2]  The obligation to file and EDIR with respect to an emissions-related defect applies during the model year when the vehicles are manufactured and for five years thereafter. 40 C.F.R. §85.1901. Defects discovered after this time period are not subject to the reporting duty.

[3]  For example, EPA could potentially pursue an administrative recall of the OBD Subject Vehicles. Under 207(c) of the Act, 42 U.S.C. § 7541(c), if EPA were to determine that a substantial number of any class or category of motor vehicles or engines do not conform to regulatory requirements, it may require a manufacturer to submit a plan for remedying the failure of the vehicles to conform to the applicable standards.

[4]  Chrysler has executed a parallel administrative Settlement Agreement with the California Air Resources Board, providing for similar remedies for the California-registerd Catalyst and OBD Subject Vehicles and the payment of $1 million to the California Air Pollution Control Fund. California has authority, pursuant to a waiver issued by EPA under Section 209(b) of the Act, 42 U.S.C. § 7543(b), to adopt and enforce its own standards for emissions from new motor vehicles and new motor vehicle engines. California is the only state to have received such a waiver. Thus, vehicles manufactured for sale in California must meet California standards, and vehicles manufactured for sale in the other 49 states must meet federal standards.

The injunctive relief provisions of the Consent Decree are as follows:

1.   **Extended Warranty, Catalyst Inspection and Replacement, and Owner Reimbursement Program**

Chrysler is required under the Decree to provide a limited extension of the statutory emission-system warranty on the following Catalyst Subject Vehicles:

<u>Model Year</u>
1996   2.5L Jeep<sub>®</sub> Cherokee (XJ)
1996   3.9L Dodge Ram Van/Wagon (AB) and Ram Pickup Truck (BR)
1996   5.2L Dodge Ram Pickup Truck (BR)
1996   5.9L (EML) Dodge Ram Pickup Truck (BR)
1997   3.9L Dodge Ram Van/Wagon (AB), Dakota (AN), and Ram Pickup Truck (BR)
1998   3.9L Dodge Ram Pickup Truck (BR)
1999   3.9L Dodge Dakota (AN)
1999   5.2L Dodge Ram Pickup Truck (BR/BE)
2000   5.9L (EMM) Heavy-Duty Dodge Ram Pickup Truck (BR/BE) (NAA)
2000   8.0L Heavy-Duty Dodge Ram Pickup Truck (BR/BE) (NAA)

The Decree requires Chrysler to issue notice letters to owners of these vehicles and bulletins to its dealers advising them that the warranty on these vehicles has been extended, and that any vehicle presented to a Chrysler dealer with a copy of the notice letter or a rattling catalyst complaint will be inspected, at no charge, and if the Catalyst Defect is found, the catalyst will be replaced with a new catalyst.[5]  Chrysler will also set up a procedure allowing any vehicle owner

---

[5] Specifically, the extension is to the *latest date* that is:  (a) ten years from the date the vehicle was placed in service or 120,000 miles, whichever is first; (b) one year from the date of the owner notification letter sent pursuant to the Consent Decree; or (c) two years from the date of the owner notification letter if the vehicle is presented for service as a result of a failed California SMOG check or an State Inspection and Maintenance ("I/M") test due to a defective catalytic converter; except that the extension for the 2000 MY 5.9L (EMM) and 8.0L Heavy-Duty Dodge Ram Pickup Truck (BR/BE) is to the *latest date* that is:  (a) the end of the warranty provided pursuant to the Act; or (b) twelve months from the date of the owner notification letter. See Consent Decree, Appendix ("App.") A, ¶ 1.

that paid for repair of a defective catalyst out of his or her own pocket before receiving notice of the warranty extension to submit a claim to Chrysler for reimbursement.

### 2. OBD Recall and Catalyst Inspection and Replacement Program

In addition, the Consent Decree requires Chrysler to implement an OBD Recall and Catalyst Replacement Program for the following vehicles:

> Model Year
> 1996    4.0L Jeep® Cherokee (XJ) and Grand Cherokee (ZJ)
> 1997    2.5L Jeep® Wrangler (TJ) (built July 1996 and later), Cherokee (XJ), and Dodge Dakota (AN)
> 1998    2.5L Jeep® Wrangler (TJ), Cherokee (XJ), and Dodge Dakota (AN)

Pursuant to the Program, Chrysler will issue notice letters to owners of the vehicles and bulletins to its dealers advising them of the recall. Chrysler will bear all of the costs of the recall. Any vehicle brought in for repair of the defective OBD system will also be inspected for the Catalyst Defect, at no charge, and if a defective catalyst is found, Chrysler will replace the catalyst with a new catalyst engineered to correct the defect. As with the Extended Warranty vehicles above, Chrysler will also set up a procedure allowing any vehicle owner that paid for repair of a defective catalyst out of his or her own pocket before receiving notice of the recall to submit a claim to Chrysler for reimbursement.[6] See Consent Decree, App. B.

---

[6] Although the Complaint does not allege any claim arising from the OBD Defect, it is well established that parties may agree in a consent decree to relief that is broader than what a court could order under the governing statute after a trial. Local No. 93, Int'l Ass'n of Firefighters v. Cleveland, 478 U.S. 501, 525-26. District courts may properly approve a consent decree "where (1) it springs from and serves to resolve a dispute within the courts' subject-matter jurisdiction; (2) it comes within the general scope of the case made by the pleadings; and (3) furthers the objectives upon which the complaint was bases. Conservation Law Foundation of New England, Inc. v. Franklin, 989 F.2d 54, 59 (1st Cir. 1993). Here, the OBD Subject Vehicles are a subset of the Catalyst Subject Vehicles covered by the claims in the Complaint. Since the Catalyst Subject Vehicles will receive a remedy – the extended warranty described above – it makes sense to

(continued...)

### 3. Owner Notification Program

Next, with respect to the following vehicles, Chrysler will send a letter to the vehicle owners reminding them of the fact that their vehicles are still under warranty and that any vehicle exhibiting a rattling or defective catalyst can be repaired at no cost to the owner at a Chrysler dealer:

Model Year
1999   3.9L Dodge Ram Van/Wagon (AB) and Dodge Ram Pickup Truck (BR)
1999   5.2L Dodge Ram Van/Wagon (AB) and Dodge Dakota (AN)
1999   5.9L (EML) Dodge Ram Van/Wagon (AB), Dodge Dakota (AN), and Dodge Ram Pickup Truck (BR/BE)
2001   5.9L (EMM) Heavy-Duty Dodge Ram Pickup Truck (BR/BE)
2001   8.0L Heavy-Duty Dodge Ram Pickup Truck (BR/BE)

See Consent Decree, App. C. This approach is appropriate for these vehicles because they are still within the statutory emission-system warranty and thus can be repaired under the vehicle owner's existing warranty. The notice pursuant to the Consent Decree will serve to remind such owners of their rights.

### 4. Supplemental Emission-Related Defect Monitoring and Reporting Protocol

To address the compliance deficiencies in Chrysler's emission-related defect reporting, the Decree imposes a Supplemental Emission-Related Defect Monitoring and Reporting Protocol on the company. The Protocol expressly supplements Chrysler's reporting obligations and does not supplant the regulatory requirements in 40 C.F.R. §§ 85.1901 et seq. See Consent Decree, App. D.

---

[6](...continued)
provide at the same time that those Catalyst Subject Vehicles that are also OBD Subject Vehicles receive a remedy for both problems.

**D.    NOTICE OF THE PROPOSED SETTLEMENT; NO COMMENTS RECEIVED**

As noted above, pursuant to 28 C.F.R. § 50.7, notice of the Consent Decree was published in the Federal Register on January 5, 2006, 71 Fed. Reg. 618-01.  The United States received no comments in response to the Federal Register notice.

### ARGUMENT

**THE COURT SHOULD ENTER THE PROPOSED DECREE AS IT IS A FAIR, ADEQUATE, AND REASONABLE SETTLEMENT CONSISTENT WITH THE PUBLIC INTEREST.**

The standard to be applied by a court reviewing a proposed consent decree is whether the settlement is "fair, adequate, reasonable, and appropriate under the particular facts and that there has been valid consent by the concerned parties."  Environmental Defense v. Leavitt, 329 F. Supp. 2d 55, 70 (D.D.C. 2004) (quoting Citizens for a Better Environment v. Gorsuch, 718 F.2d 1117, 1126 (D.C. Cir. 1983); and United States v. District of Columbia, 933 F. Supp. 42, 46-47 (D.D.C. 1996)).  In general, a reviewing court should be satisfied that a proposed settlement fairly and reasonably resolves a controversy in a manner consistent with the public interest.  Environmental Defense, 718 F. Supp. 2d at 70 (citation omitted).  By these criteria, the proposed consent decree should be approved.  Furthermore, this Court has recognized that the policy of favoring settlements "has particular force where . . . a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement."  Id. (quoting United States v. Cannons Engineering Corp., 899 F.2d 79, 84 (1st Cir. 1990)).

**A.     The Consent Decree Is Procedurally and Substantively Fair.**

Whether a proposed decree is "fair" invokes notions of procedural fairness and substantive fairness. Factors to be considered in reviewing procedural fairness include the "good faith" efforts of the parties to resolve a dispute, "the opinions of counsel, and the possible risks involved in litigation if the settlement is not approved." Environmental Defense v. Leavitt, 329 F. Supp. 2d at 70 (quoting United States v. District of Columbia, 933 F. Supp. at 48). See also, e.g., United States v. Hooker Chem. & Plastics Corp., 607 F. Supp. 1052, 1057 (W.D.N.Y.), aff'd, 776 F.2d 410 (2d Cir. 1985). Substantive fairness involves "concepts of corrective justice and accountability." Id.

The Consent Decree is the product of extensive negotiation between EPA, represented by experienced Agency counsel and the Department of Justice, and Chrysler, represented by experienced in-house and outside counsel. The settlement holds Chrysler accountable for its failure to timely file EDIRs reporting the Catalyst Defect by imposing a $1 million in civil penalties and by requiring the performance of a $3 million supplemental environmental project to reduce emissions from in-use engines. The settlement also requires Chrysler to provide owners of the Catalyst Subject Vehicles with an extended emission-system warranty to allow an opportunity for them to obtain a cost-free repair of any covered catalyst exhibiting the Catalyst Defect, and a recall of the OBD Subject Vehicles to correct the OBD Defect. The Decree also addresses the deficiencies alleged in Chrysler's emissions-related defect reporting practices by requiring, in addition to compliance with applicable regulations described above, adherence to the Supplemental Protocol set forth in the Decree. For these reasons, the Consent Decree is both procedurally and substantively fair.

**B.    The Consent Decree Is Reasonable.**

The factors for determining the "adequacy, reasonableness, and appropriateness" of a proposed consent decree "focus on the extent to which the decree is confined to the dispute between the parties and whether the decree adequately accomplishes its purported goal." Environmental Defense, 329 F. Supp. 2d at 71.  The reviewing court should determine whether the proposed decree is "reasonable from and objective point of view" and not "impose its own judgments as to how it would prosecute and resolve a particular case."  Id., citing United States v. District of Columbia, 933 F. Supp. at 50.

The proposed decree is objectively reasonable, addressing the conduct and consequences of Chrysler's failure to file timely EDIRs with EPA.  EPA's regulations require prompt reporting when a manufacturer determines that a specific emission-related defect exists in 25 or more vehicles or engines of the same model year.  Prompt reporting would have allowed EPA to monitor the Catalyst Defect situation, including Chrysler's progress towards and timeline for implementing a remedy for the defect, and also would have allowed EPA to collect better data as to the environmental impacts of the defect.

The $1 million civil penalty and $3 million supplemental environmental project make clear that EPA will vigorously enforce a manufacturer's obligation to timely report emission-related defects.  In addition to a substantial civil penalty, the proposed decree requires Chrysler to provide a remedy for the affected vehicles and to improve its defect information data collection and defect reporting systems, as described above.  The proposed decree is thus objectively adequate, reasonable, and appropriate.

**C.    <u>The Proposed Decree Is In The Public Interest</u>.**

Congress passed the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." Section 101(a)(1) of the Act, 42 U.S.C. § 7401(b)(1). In 1990, Congress amended the Act, including the mobile source control provisions of Title II, in recognition of the fact that "[c]ontrols on emissions from mobile sources [i.e., cars, trucks, and other vehicles] will be an important part of the efforts to attain healthy air . . . for a simple reason: mobile vehicles are the largest source of ozone and carbon monoxide pollution." S. Rep. No. 101-228 (1989) reprinted in 1990 U.S.C.C.A.N. 3385, 3468. The proposed decree furthers these Congressional goals and thus serves the public interest.

The proposed decree requires Chrysler to implement programs to address the emission defects on the Catalyst and OBD Subject Vehicles and to enhance its defect investigation and reporting system. Thus, the proposed consent decree is consistent with and enforces existing law and imposes specific measures designed to ensure that Chrysler's vehicles and defect reporting practices conform to the requirements of the Clean Air Act. As such, the Decree is in the public interest.

**CONCLUSION**

For the reasons set forth above, the Court should approve and sign the Consent Decree (on p. 30) and enter it as a final judgment.

        Respectfully submitted,

        SUE ELLEN WOOLDRIDGE
        Assistant Attorney General
        Environment & Natural Resource Division

        **/s/ Thomas P. Carroll**
By:   THOMAS P. CARROLL, D.C. Bar # 388593
        Senior Attorney
        Environmental Enforcement Section
        United States Department of Justice
        P.O. Box 7611
        Washington, D.C., 20044
        Tel.  (202) 514-4051
        Fax.  (202) 514) 2583
        thomas.carroll@usdoj.gov

<u>OF COUNSEL</u>
JACQUELINE ROBLES WERNER
Attorney, Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Division
1200 Pennsylvania Avenue, N.W.
Mailcode 2242A
Washington, D.C. 20004

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | No. 1:05CV02440-RBW |
| Plaintiff,  ) | |
| ) | |
| v.  ) | |
| ) | |
| DAIMLERCHRYSLER CORPORATION  ) | |
| ) | |
| Defendant.  ) | |

CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2006, I electronically filed the foregoing Motion on Consent to Enter Consent Decree and Memorandum of Points and Authorities in Support with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel for defendant DaimlerChrysler Corporation identified below:

Patrick M. Raher, Esq.
Patrick D. Traylor, Esq.
Hogan & Hartson LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20006

/s/ Thomas P. Carroll
Thomas P. Carroll, D.C. Bar No. 388593
U.S. Department of Justice, Env. & Nat. Resources Div.
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044
Tel. (202) 514-4051
Fax. (202) 514) 2583
thomas.carroll@usdoj.gov