IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Civil Action No. 1:05CV02440-RBW |
| Plaintiff, | ) | |
| | ) | Judge Reggie B. Walton |
| v. | ) | |
| | ) | |
| DAIMLERCHRYSLER CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CONSENT DECREE**

# TABLE OF CONTENTS

I.       JURISDICTION AND VENUE .......................................... 3

II.      DEFINITIONS .................................................... 4

III.     APPLICABILITY .................................................. 7

IV.      INJUNCTIVE RELIEF .............................................. 8

         A.      EXTENDED WARRANTY, CATALYST INSPECTION AND
                 REPLACEMENT, AND OWNER REIMBURSEMENT PROGRAM ........ 8

         B.      OBD RECALL AND CATALYST INSPECTION AND REPLACEMENT
                 PROGRAM ............................................... 8

         C.      VEHICLE OWNER NOTIFICATION PROGRAM ...................... 8

         D.      SUPPLEMENTAL EMISSIONS-RELATED DEFECT MONITORING AND
                 REPORTING SYSTEM ...................................... 8

V.       REPORTING ...................................................... 8

VI.      SETTLEMENT OF PENALTY CLAIM .................................... 11

VII.     SUPPLEMENTAL ENVIRONMENTAL PROJECTS ........................... 13

VIII.    STIPULATED PENALTIES .......................................... 14

IX.      FORCE MAJEURE ................................................. 18

X.       DISPUTE RESOLUTION ............................................ 20

XI.      RIGHT OF ENTRY/RECORDS RETENTION .............................. 22

XII.     EFFECT OF DECREE .............................................. 24

XIII.    NON-WAIVER PROVISIONS ......................................... 25

XIV.     COSTS OF SUIT ................................................. 26

XV.      MODIFICATION .................................................. 26

XVI.     PUBLIC COMMENT AND ENTRY OF CONSENT DECREE .................. 26

XVII.   TERMINATION ......................................................... 27

XVIII.  SIGNATORIES/SERVICE .............................................. 28

XIX.    INTEGRATION ........................................................ 28

XX.     FINAL JUDGMENT .................................................... 29

XXI.    RETENTION OF JURISDICTION ....................................... 29

XXII.   APPENDICES ........................................................ 29

WHEREAS, Plaintiff, the United States of America, at the request of the Administrator

of the United States Environmental Protection Agency ("EPA") and by authority of the Attorney

General, filed a Complaint herein against defendant DaimlerChrysler Corporation ("DCC")

alleging violations of the Clean Air Act (the "Act"), as amended, 42 U.S.C. § 7401 *et seq.*, for

failure to file timely Emissions Defect Information Reports ("EDIR") with EPA as required by

40 C.F.R. § 85.1903 with regard to defective Catalytic Converters for certain classes and

categories of Jeep® and Dodge vehicles;

WHEREAS, EPA and DCC have engaged in discussions concerning the correction of

these alleged defects in certain DCC light-duty trucks leading to the agreements contained herein,

thereby avoiding potential further administrative or judicial proceedings with respect to the

matters resolved herein;

WHEREAS, EPA promulgated regulations pursuant to Section 202 of the Act, 42 U.S.C.

§ 7521, which set forth standards related to the control of emissions applicable to specified

classes of new motor vehicles, including light-duty vehicles and trucks;

WHEREAS, EPA promulgated regulations pursuant to Section 207(c) of the Act,

42 U.S.C. § 7541(c), which set forth provisions under which a manufacturer can be required to

remediate vehicles not in conformance with standards in Section 202 of the Act, 42 U.S.C.

§ 7521;

WHEREAS, under the authority of Section 208(a) of the Act, 42 U.S.C. § 7542(a), EPA

promulgated regulations codified at 40 C.F.R. Part 85, requiring manufacturers to report

emission-related defects to EPA; and Section 85.1903, 40 C.F.R. § 85.1903 requires a

manufacturer to file an EDIR with EPA within fifteen working days after the manufacturer

determines that: (1) in accordance with procedures established by the manufacturer to identify

safety related defects, a specific emission-related defect exists; and (2) the specific emission-related defect exists in twenty-five or more vehicles of the same model year. In addition, Section 85.1903(b), 40 C.F.R. § 85.1903(b), provides that any required information that was either not available or is significantly revised must be submitted by the manufacturer as the information becomes available;

WHEREAS, DCC is incorporated under the laws of the State of Delaware and is qualified to do business in all fifty states and the District of Columbia. DCC is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e), and a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1);

WHEREAS, at all times relevant to this action, DCC was engaged in the business of manufacturing and selling new motor vehicles in the United States;

WHEREAS, DCC has sold, offered for sale, or introduced or delivered for introduction into commerce, or imported, new motor vehicles into the United States, including the vehicles that are the subject of this Consent Decree;

WHEREAS, the United States alleges in the Complaint, *inter alia*, that there are emission-related defects in the Catalytic Converters installed in certain classes or categories of DCC Jeep® and Dodge motor vehicles;

WHEREAS, the United States further asserts that DCC failed to file timely EDIRs with EPA, as required by 40 C.F.R. § 85.1903, with regard to the Catalytic Converter defects;

WHEREAS, DCC has acted in good faith in its dealings with DOJ and EPA in the discussions concerning the resolution of this matter;

-2-

WHEREAS, DCC has denied and continues to deny the violations alleged in the Complaint and nothing herein shall constitute an admission of liability;

WHEREAS, the United States and DCC have consented to entry of this Consent Decree without trial of any issues; and

WHEREAS, the United States and DCC recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the United States and DCC in good faith, that implementation of this Consent Decree will avoid prolonged and complicated litigation between the United States and DCC, and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I of this Consent Decree, and with the consent of the parties, it is hereby ADJUDGED, ORDERED, AND DECREED as follows:

## I. <u>JURISDICTION AND VENUE</u>

1.      The Court has jurisdiction over the subject-matter of this action and the Parties pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and Sections 204 and 205 of the Act, 42 U.S.C. §§ 7523 and 7524.

2.      Venue in this Court is proper pursuant to Sections 204 and 205 of the Act, 42 U.S.C. §§ 7523 and 7524. For purposes of this Decree, or any action to enforce this Decree, DCC consents to the Court's jurisdiction over this Decree or such action and over DCC, and consents to venue in this judicial district.

3.     For purposes of this Consent Decree, DCC agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 203, 204, and 205 of the Act, 42 U.S.C. §§ 7522, 7523, and 7524.

## II. DEFINITIONS

4.     Unless specifically defined in this Section or elsewhere in this Consent Decree, terms used herein shall have the meanings currently set forth in Sections 202, 216, and 302 of the Act, 42 U.S.C. §§ 7521, 7550, and 7602, and the regulations promulgated under Title II of the Act, 42 U.S.C. §§ 7521–7590.

a.     "Act" means the Clean Air Act, as amended, 42 U.S.C. §§ 7401 *et seq*.

b.     "California" means the State of California.

c.     "California Vehicles" means those Catalyst and OBD Affected Vehicles certified to California emissions standards and registered in the State of California.

d.     "CARB" means the California Air Resources Board.

e.     "Catalyst Affected Vehicles" means:  model year 1996 through 1998 Jeeps®; 1996 through 1999 light-duty Dodge Ram pickup trucks, vans, and wagons, and Dodge Dakota pickup trucks; and 2000 and 2001 heavy-duty 5.9 and 8.0 liter Dodge Ram pickup trucks.

f.     "Catalytic Converter" means a DCC OEM device installed in the exhaust system of an internal combustion engine that utilizes precious metals for the purpose of reducing hydrocarbon, carbon monoxide, and oxides of nitrogen emissions, including any and all catalysts and any parts that are integral to any converter or would necessitate converter replacement if it were to fail, such as the converter shell, nipples, and heat shield.

-4-

g.     "Certificate of Conformity" means a certificate issued by EPA pursuant to Section 206 of the Act, 42 U.S.C. § 7525.

h.     "Consent Decree" or "Decree" means this document, including the Appendices identified or incorporated herein and the Attachments identified in the Appendices.

i.     "Day" means a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

j.     "DCC Dealer" is any authorized dealer of new DCC motor vehicles.

k.     "DCC Technician" is a DCC Dealer employee who is an Automotive Service Excellence (ASE) Certified Technician.

l.     "Effective Date" is the date the Consent Decree is entered by the Court.

m.     "EDIR" means an Emissions Defect Information Report required pursuant to 40 C.F.R. § 85.1903.

n.     "Emission-related Defect" means a defect in design, materials, or workmanship in a device, system, or assembly described in the approved Application for Certification (required by 40 C.F.R. §§ 86.1843-01 and 86.1844-01, 40 C.F.R. § 86.098-22 and like provisions of subpart A of Part 85 and 40 C.F.R. Part 86) which affects any parameter or specification enumerated in Appendix VIII to 40 C.F.R. Part 85.

o.     "Empty Can Catalyst" means an Original Design Catalytic Converter in which the catalytic substrate and retaining mat have deteriorated to the extent that they are no longer significantly present in the Catalytic Converter shell.

-5-

p.     "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

q.     "FTP" means the Federal Test Procedures for 1994 and later light-duty vehicles and light-duty trucks specified in 40 C.F.R. Part 86.

r.     "Interest" means interest at the rate allowed on money judgments pursuant to 28 U.S.C. § 1961.

s.     "MIL" means the malfunction indicator light required to be installed on all vehicles meeting the OBD II requirements as defined in "OBD II."

t.     "New DCC OEM Catalytic Converter" means any Catalytic Converter released as a service part for the Catalyst Affected Vehicles that has either: (i) a metallic substrate; or (ii) a ceramic substrate and an Interam₂ 2000LTA intumescent mat (or equivalent).

u.     "OBD" means the vehicle component or element of design installed to meet the requirements of OBD II that serves as a computer-based emission control monitoring system required in model year 1994 and later gasoline or diesel engines, light-duty vehicles, and trucks.

v.     "OBD II" means the requirements found at Title 13, California Code of Regulations, Section 1968.1, as in effect for Model Year 1996 through 2001 motor vehicles, and 40 C.F.R. § 86.094-17.

w.     "OBD Affected Vehicles" means 1996 through 1998 Jeeps₂ and 1996 through 1999 light-duty Dodge Ram pickup trucks, vans, and wagons, and Dodge Dakota pickup trucks.

x.     "OEM" means original equipment manufacturer.

-6-

y.    "Original Design Catalytic Converter" means any Catalytic Converter installed on a Catalyst Affected Vehicle that is not a New DCC OEM Catalytic Converter.

z.    "Paragraph" means a portion of this Consent Decree identified by an Arabic numeral.

aa.    "Parties" means the United States and DCC, and each shall be a "Party."

bb.    "Section" means a portion of this Consent Decree identified by a Roman numeral.

cc.    "United States" means the United States of America, acting on behalf of EPA.

### III. APPLICABILITY

5.    This Consent Decree applies to and is binding upon the United States and upon DCC, its employees, contractors, agents, successors, and assigns.  Unless approved by the Parties in writing, any change in DCC's ownership or corporate status shall in no way alter DCC's responsibilities under this Consent Decree.  In any action to enforce this Consent Decree, DCC shall not raise as a defense the failure of its officers, directors, agents, servants, contractors, or employees or their successors to take actions necessary to comply with the provisions hereof.

6.    DCC shall provide a copy of this Consent Decree to any contractor retained to perform work required under this Consent Decree.  DCC shall not assert as a defense to any action to enforce this Consent Decree the failure of any DCC officer, employee, or agent (provided that "agent" shall not be deemed to include a DCC Dealer) to have received a copy of this Consent Decree.

## IV.  INJUNCTIVE RELIEF

### A.    EXTENDED WARRANTY, CATALYST INSPECTION AND REPLACEMENT, AND  OWNER REIMBURSEMENT PROGRAM

7.    DCC shall implement an Extended Warranty, Catalyst Inspection and

Replacement, and Owner Reimbursement Program in accordance with Appendix A.

8.    Nothing in this Consent Decree shall be construed to affect any other warranty

provided to such owners or purchasers under federal, state, or local law, or otherwise.

### B.    OBD RECALL AND CATALYST INSPECTION AND REPLACEMENT PROGRAM

9.    DCC shall implement an OBD Recall and Catalyst Inspection and Replacement

Program in accordance with Appendix B.

### C.    VEHICLE OWNER NOTIFICATION PROGRAM

10.    DCC shall implement a Vehicle Owner Notification Program in accordance with

Appendix C.

### D.    SUPPLEMENTAL EMISSION-RELATED DEFECT MONITORING AND REPORTING SYSTEM

11.    DCC shall implement a Supplemental Emission-Related Defect Monitoring and

Reporting System for all DCC vehicles sold in the United States pursuant to a Certificate of

Conformity, in accordance with Appendix D.

## V.  REPORTING

12.    Each notice, submission, or report required by this Consent Decree shall be

accompanied by a transmittal letter referencing the appropriate Paragraph or Appendix of this

Consent Decree.  DCC shall, through a duly authorized representative having knowledge of the

contents of the notice, submission, or report, sign and certify under 28 U.S.C. § 1746 as follows:

> I certify under penalty of law that I have examined and am familiar
> with the information submitted in this document and all attachments
> and that this document and its attachments were prepared either by
> me personally or under my direction or supervision in a manner
> designed to ensure that qualified and knowledgeable personnel
> properly gathered and presented the information contained therein.
> I further certify, based on my personal knowledge or on my inquiry
> of those individuals immediately responsible for obtaining the
> information, that the information is true, accurate, and complete. I
> am aware that there are significant penalties for submitting false
> information, including the possibility of fines and imprisonment for
> knowing and willful submission of a materially false statement.

DCC shall not object to the admissibility in evidence of any such reports in a

proceeding to enforce this Consent Decree.

13.    Compliance with the reporting and notification requirements of this Consent

Decree shall not relieve DCC of its obligation to comply with any other reporting or notification

requirements imposed by any applicable federal, state, or local laws, regulations, or permits.

Nothing contained in this Consent Decree is intended to waive or modify any requirement to

submit reports, EDIRs, submissions, notifications, or communications with the United States or

EPA, in the manner, to the persons, or as otherwise required by any statute, regulation, or other

law or provision.

14.    Unless otherwise provided herein, reports, submissions, notifications to, or

communications with the United States or DCC shall be deemed submitted on the date they are

postmarked and sent by first class mail, overnight receipt mail service, or by certified or

registered mail, return receipt requested. Except as otherwise specifically provided herein, when

written notification to or communication with the United States, EPA, or DCC is required by the

terms of this Consent Decree, it shall be addressed as follows:

As to the United States:

Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington D.C. 20044-7611
Re: DOJ No. 90-5-2-1-08231

For EPA:

Director
Compliance and Innovative Strategies Division (6403J)
Office of Transportation and Air Quality
Office of Air and Radiation
U.S. Environmental Protection Agency
1310 L Street, N.W.
Washington, D.C. 20004

Director
Air Enforcement Division (2242A)
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Ariel Rios Building South
Washington, D.C. 20004

With a copy to:

Thomas M. Ball
Program Manager
Compliance and Innovative Strategies Division
U.S. Environmental Protection Agency
2000 Traverwood
Ann Arbor, MI 48105

Jacqueline Robles Werner, Esq.
Air Enforcement Division (2242A)
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

-10-

As to DCC:

Reginald R. Modlin
Director, Environmental and Energy Planning
DaimlerChrysler Corporation
800 Chrysler Drive
Auburn Hills, MI 48326

Kathleen Hennessey
Office of the General Counsel
DaimlerChrysler Corporation
800 Chrysler Drive
Auburn Hills, MI 48326

All Parties to the Consent Decree may change the address for providing notices to it by serving

all other addressees identified above with a written notice setting forth the new address.

## VI. SETTLEMENT OF PENALTY CLAIM

15.    Within thirty days after the Effective Date of this Consent Decree, DCC shall pay

the United States the sum of $1 million to settle the United States' disputed claim that DCC is

liable for the payment of a civil penalty.

16.    Payment shall be made by Electronic Funds Transfer ("EFT") to the U.S.

Department of Justice ("DOJ") in accordance with instructions to be provided to DCC following

lodging of the Consent Decree by the Financial Litigation Unit of the U.S. Attorney's Office.

Any EFT received at the DOJ lockbox bank after 11:00 a.m. Eastern Time will be credited on the

next business day.  Notice of the EFT shall simultaneously be mailed to the following:

Docket Clerk
Mailcode MS 2214A
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Jacqueline Robles Werner, Esq.
Air Enforcement Division (2242A)
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Thomas M. Ball
Program Manager
Compliance and Innovative Strategies Division
U.S. Environmental Protection Agency
2000 Traverwood
Ann Arbor, MI 48105

Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Reference DOJ Case No. 90-5-2-1-08231

17.     The transmittal letter forwarding such notice shall include the DOJ case number

90-5-2-1-08231 and the civil action number of this case.

18.     If DCC fails to make the payment required by Paragraph 15 within thirty days of

the Effective Date, the payment is late. Late payment is subject to Interest and Stipulated

Penalties as provided below.

19.     DCC shall not deduct the payment required by Paragraph 15 in calculating its

federal income tax.

20.     The United States shall be deemed a judgment creditor for purposes of collection

of the payment required by Paragraph 15.

-12-

## VII. SUPPLEMENTAL ENVIRONMENTAL PROJECTS

21.     DCC shall establish, implement, and complete a Supplemental Environmental Project ("SEP") in accordance with the terms, instructions, elements, work plans, and time schedules in Appendix E attached hereto.

22.     It is agreed by and between the Parties that the SEP is intended to secure significant environmental protection and improvements that are not otherwise required by law.

23.     DCC shall expend at least $3 million in eligible SEP costs for the SEP identified in Appendix E.

24.     DCC is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Decree. "Satisfactory completion" means that DCC shall complete the work in accordance with all work plans and specifications for the project and shall spend not less than the amount set forth in Paragraph 23 of this Consent Decree. DCC may use contractors or consultants in planning and implementing the SEP.

25.     EPA may, in its sole discretion, require DCC to provide information in addition to that described in Appendix E of this Consent Decree in order to determine the adequacy of SEP completion or eligibility of SEP costs.

26.     After receiving the final SEP Report pursuant to Appendix E, the United States shall notify DCC whether DCC has satisfactorily completed the SEP. If the SEP has not been satisfactorily completed in accordance with all applicable work plans and schedules, or if the amount expended on performance of the SEP is less than the amount set forth in Paragraph 23 of this Consent Decree, Stipulated Penalties may be assessed under Section VIII of this Consent Decree.

-13-

27.    Should DCC dispute any determination by the United States concerning the satisfactory performance of the SEP or the amount of eligible SEP costs, it may invoke the Dispute Resolution provisions of Section X of this Decree.  No other disputes arising under this Section shall be subject to Dispute Resolution.

28.    Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 12 (Reporting) of this Consent Decree.

29.    Any public statement, oral or written, in print, film, or other media, made by DCC making reference to the SEP under this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States v. DaimlerChrysler Corporation, taken on behalf of the U.S. Environmental Protection Agency under the Clean Air Act."

## VIII. STIPULATED PENALTIES

30.    DCC shall be liable for Stipulated Penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

31.    The following Stipulated Penalties shall accrue per violation per day for each violation of a requirement identified as follows:

-14-

a.      For failure to make the payment required by Paragraph 15 of this Consent Decree when due: $1,000.00 per day for each day that the payment is late.

b.      For failure to commence the owner notification process required under Appendices A, B, or C of this Consent Decree, or DCC Dealer notifications required under Appendices A or B, by the dates specified therein: $300 per day for the first thirty days of the delay; $500 per day for the next thirty days of delay; and $700 per day for any delay beyond sixty days.

c.      For failing or refusing to inspect or replace a Catalytic Converter, or to reimburse an owner, as and when required by the Extended Warranty, Catalyst Inspection and Replacement, and Owner Reimbursement Program in Appendix A, or the OBD Recall and Catalyst Inspection and Replacement Program in Appendix B: $800 per vehicle per day of violation.

d.      For failing or refusing to perform an OBD reflash on a vehicle as and when required by the OBD Recall and Catalyst Inspection and Replacement Program in Appendix B: $400 per vehicle per day of violation.

e.      For failure to create, maintain, or provide copies of records or reports as required by this Consent Decree: $100 per day for the first thirty days of delay; $200 per day for the next thirty days of delay; and $400 per day for any delay beyond sixty days.

f.      For failing or refusing to comply with requirements of Paragraph 11 of this Consent Decree or the terms and conditions of the Supplemental Emission-Related Defect Monitoring and Reporting Protocol set forth in Appendix D, as follows:

-15-

     i.     For failure within thirty Days of the Effective Date of this Decree

to supplement its existing emission-related defect monitoring and

reporting procedures in accordance with App. D, Paragraph 1:

$1,000 per day.

     ii.     For failure timely to file any report required by Appendix D, or to

include in an any report filed pursuant to Appendix D all available

required information:

| For each violation | Penalty |
|---|---|
| 1st to 10th day | $   500 per day |
| 11th to 30th day | $   750 per day |
| After 30th day | $1,000 per day |

     g.     For failure to satisfactorily complete any SEP in accordance with the SEP

Plan and all work plans and specifications for the project:   $300 per day for the first thirty days

of delay; $500 per day for the next thirty days of delay; and $700 per day for any delay beyond

sixty days.

     h.     If DCC has spent less for any SEP than the amount set forth in the SEP

Plan, DCC shall pay a stipulated penalty equal to the difference between the amount of total

eligible SEP costs incurred by DCC and the amount set forth in the Plan.

     i.     For failing or refusing to submit SEP annual reports or the final SEP

Report in accordance with the SEP Plan:  $200 per day for the first thirty days of delay; $400 per

day for the next thirty days of delay; and $500 per day for any delay beyond sixty days.

     32.     Stipulated Penalties shall continue to accrue as provided in Paragraph 31 of this

Consent Decree during any Dispute Resolution, but need not be paid until the following:

      a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, DCC shall pay accrued penalties determined to be owing, together with Interest, to the United States within thirty days of the effective date of the agreement or the receipt of EPA's decision or order.

      b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, DCC shall pay all accrued penalties determined by the Court to be owing, together with Interest, within sixty days of receiving the Court's decision or order, except as provided in subparagraph c, below.

      c.     If any Party appeals the District Court's decision, DCC shall pay all accrued penalties determined to be owing, together with Interest, within fifteen days of receiving the final appellate court decision.

33.     Subject to the provisions of Section XII (Effect of Decree) of this Consent Decree, the Stipulated Penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for DCC's violation of this Consent Decree or applicable law.

34.     If a date by which DCC must meet any obligation of this Consent Decree falls on a holiday or weekend, the due date shall be the following working day. Stipulated civil penalties shall automatically begin to accrue on the first day DCC fails to satisfy any obligation or requirement of this Consent Decree and shall continue to accrue until the violation or deficiency is corrected. Stipulated penalties shall continue to accrue throughout any dispute resolution process.

35.     Stipulated penalties shall be paid no later than thirty days following the first day in which EPA sends to DCC a demand for payment of the stipulated penalties which have accrued to date together with an explanation for the basis(es) for the demand.  DCC shall pay Stipulated Penalties owing to the United States by EFT in accordance with Paragraph 16 of this Consent Decree or by certified or cashier's check in the amount due, payable to the "U.S. Department of Justice," referencing DOJ No. 90-5-2-1-08231 and the civil action number of this case, and delivered to the office of the United States Attorney, District of Columbia, United States Attorney's Office, 555 4th Street, NW, Washington, DC 20530.

36.     DCC shall not deduct Stipulated Penalties paid under this Section in calculating its federal income tax.

37.     If DCC fails to pay Stipulated Penalties according to the terms of this Consent Decree, DCC shall be liable for Interest on such penalties accruing as of the date payment became due.

38.     Notwithstanding any other provision of this Decree, the United States may, in its unreviewable discretion, waive any portion of a stipulated penalty that has accrued pursuant to this Decree.

## IX. FORCE MAJEURE

39.     A "force majeure event" is any event beyond the control of DCC, its contractors, or any entity controlled by DCC that delays the performance of any obligation under this Consent Decree despite DCC's best efforts to fulfill the obligation.  "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest

-18-

extent possible. "Force Majeure" does not include DCC's financial inability to perform any obligation under this Consent Decree.

40.     DCC shall provide written notice, as provided in Paragraph 14 of this Consent Decree, within fourteen days of the time DCC first knew of, or by the exercise of due diligence, should have known of, the event. The notice shall state:  the anticipated duration of any delay; its cause(s); DCC's past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and DCC's rationale for attributing any delay to a force majeure event. Failure to provide oral and written notice as required by this Paragraph shall preclude DCC from asserting any claim of force majeure. DCC shall adopt all reasonable measures to avoid or minimize such delay.

41.     If the United States agrees that a force majeure event has occurred, the United States may agree to extend the time for DCC to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation. Where the United States agrees to an extension of time, the appropriate modification shall be made pursuant to Section XV (Modification) of this Consent Decree.

42.     If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by DCC, the United States' position shall be binding, unless DCC invokes Dispute Resolution under Section X of this Consent Decree. In any such dispute, DCC bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a force majeure event, that DCC gave the notice required by

-19-

Paragraph 40, that the force majeure event caused any delay DCC claims was attributable to that event, and that DCC exercised best efforts to prevent or minimize any delay caused by the event.

43.    An extension of one compliance date based on a particular event shall not automatically extend any other compliance date. DCC shall make an individual showing of proof regarding the cause of each delayed incremental step or other requirement for which an extension is sought.

## X. DISPUTE RESOLUTION

44.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. DCC's failure to seek resolution of a dispute under this Section shall preclude DCC from raising any such issue as a defense to an action by the United States to enforce any obligation of DCC arising under this Decree.

45.    Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when DCC sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within forty-five days after the conclusion of the informal negotiation period, DCC invokes the formal dispute resolution procedures in Paragraph 46 of this Consent Decree.

46.    Formal Dispute Resolution. DCC shall invoke formal dispute resolution procedures, within the time period provided in the Paragraph 45 of this Consent Decree, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting DCC's position and any supporting documentation relied upon by DCC.

47.    The United States shall serve its Statement of Position within forty-five days of receipt of DCC's Statement of Position. The United States' Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on DCC, unless DCC files a motion for judicial review of the dispute in accordance with Paragraph 48 of this Consent Decree.

48.    DCC may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Paragraph 14 of this Consent Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within forty-five days of receipt of the United States' Statement of Position pursuant to the Paragraph 47 of this Consent Decree. The motion shall contain a written statement of DCC's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

-21-

49.     The United States shall respond to DCC's motion within the time period allowed by the Local Rules of this Court. DCC may file a reply memorandum, to the extent permitted by the Local Rules.

50.     In any dispute brought under Paragraph 48, DCC shall bear the burden of demonstrating that its position clearly complies with and furthers the objectives of this Consent Decree and the Clean Air Act and that DCC is entitled to relief under applicable law. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

51.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of DCC under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated Penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 32, above. If DCC does not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. **RIGHT OF ENTRY/RECORDS RETENTION**

52.     Subject to and in compliance with the requirements of Section 208 of the Act, 42 U.S.C. § 7542, EPA and its authorized representatives and contractors are authorized, upon presentation of appropriate credentials:

a.     to enter, at reasonable times, the premises of DCC for the purposes of inspecting or observing any activity conducted pursuant to this Consent Decree; and

-22-

b.      to inspect and review any record required to be kept under the terms and conditions of this Consent Decree.

Nothing herein shall be construed, however, to require DCC to impose new or additional right of entry requirements on DCC Dealers.

53.     DCC shall maintain the following records:

a.      Any documents reflecting or constituting communications with vehicle owners with respect to the Extended Warranty, Catalyst Inspection and Replacement, and Owner Reimbursement Program, OBD Recall and Catalyst Inspection and Replacement Program, and the Vehicle Owner Notification Program (collectively, the "Programs");

b.      Any documents reflecting or constituting communications with any contractor that DCC retains to assist with the implementation of the Programs and the Supplemental Environmental Projects under this Consent Decree; and

c.      Any documents upon which DCC relied in making any report required pursuant to this Consent Decree.

54.     DCC shall make these records available to EPA upon request.  DCC shall retain all such records for a period of five years after termination of this Consent Decree.  All information and documents submitted by DCC to the United States pursuant to this Consent Decree shall be subject to public inspection, unless identified and supported as confidential business information by DCC in accordance with 40 C.F.R. Part 2.  Nothing herein shall be construed, however, to require DCC to impose new or additional recordkeeping or retention requirements on DCC Dealers.   Nothing herein shall be construed to require DCC to allow EPA access to documents protected by any applicable privilege.

-23-

55.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by EPA pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of DCC to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII. EFFECT OF DECREE

56.    This Consent Decree does not pertain to any matters other than those expressly specified in Paragraphs 57 and 58 of this Consent Decree.

57.    This Consent Decree resolves the United States' civil claims for penalties and injunctive relief under Sections 203, 204, 205, and 208 of the Act, 42 U.S.C. §§ 7522, 7523, 7524, and 7542 with respect to:

a.    the violations alleged in the Complaint; and

b.    any failure to file EDIRs, make other reports or provide information, or to undertake a recall or other remedial action with respect to: (i) the Original Design Catalytic Converters on the Catalyst Affected Vehicles; or (ii) the inability of the OBD system, as originally installed on the OBD Affected Vehicles, to detect an Empty Can Catalyst or the failure or deterioration in performance of the Catalytic Converter.

58.    In consideration of the actions that will be performed and the payments that will be made by DCC under the terms of the Consent Decree, EPA shall not base a determination under Section 207(c)(1) of the Act, 42 U.S.C. § 7541, that any of the Catalyst Affected Vehicles does not conform to the regulations prescribed under Section 202 of the Act, 42 U.S.C. § 7521, based on the design or performance of Original Design Catalytic Converters, or that any of the OBD Affected Vehicles does not conform to such regulations based on the failure of the OBD

-24-

system, as originally installed on vehicles, to detect Catalytic Converter performance deterioration or failure or an Empty Can Catalyst. EPA's commitment under this Paragraph is conditioned upon the satisfactory performance by DCC of its obligations under this Consent Decree. This commitment extends only to DCC and does not extend to any other person.

59.      This Consent Decree does not limit or affect the rights of DCC or of the United States against any third parties not party to this Consent Decree, nor does it limit the rights of third parties not party to this Consent Decree, against DCC, except as otherwise provided by law.

60.      This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

### XIII. NON-WAIVER PROVISIONS

61.      This Consent Decree in no way affects or relieves DCC of any responsibility to comply with any federal, state, or local laws or regulations.

62.      DCC is responsible for achieving and maintaining complete compliance with all applicable federal and state laws and regulations, and compliance with this Consent Decree shall be no defense to any actions commenced pursuant to said laws and regulations, except as otherwise expressly specified in the Consent Decree.

63.      The United States reserves any and all legal and equitable remedies available to enforce the provisions of this Consent Decree.

64.      This Consent Decree shall not limit any authority of EPA under the Clean Air Act or any applicable statute, including the authority to seek information from DCC or to seek access to the property of DCC. Except as provided in Paragraphs 57 and 58, the United States reserves all remedies available to it for violations of the Clean Air Act by DCC that are not alleged in the

-25-

Complaint as well as for violations of the Clean Air Act by DCC that occur after the date of lodging of this Consent Decree.

65.    This Consent Decree does not resolve criminal liability, if any, that any person might have for violations of the Clean Air Act.

66.    Nothing in this Consent Decree shall be construed to limit the authority of the United States to undertake any action against any person, including DCC, in response to conditions that may present an imminent and substantial endangerment to the environment or to the public health or welfare.

### XIV. COSTS OF SUIT

67.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the payment required by Paragraph 15 or any Stipulated Penalties due but not paid by DCC.

### XV. MODIFICATION

68.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to any term of this Decree, it shall be effective only upon approval by the Court.

### XVI. PUBLIC COMMENT AND ENTRY OF CONSENT DECREE

69.    The Parties agree and acknowledge that final approval by the United States and entry of this Consent Decree is subject to the requirements of 28 C.F.R. § 50.7, which provides for notice of the lodging of this Consent Decree in the Federal Register, an opportunity for public comment, and consideration by the United States of any comments. The United States reserves

the right to withdraw or withhold its consent on the basis of such comments. This Paragraph does not create any rights exercisable by DCC.

70.    DCC consents to the entry of this Consent Decree without further notice.

## XVII. TERMINATION

71.    This Consent Decree will terminate upon further order of this Court at any time after December 31, 2009, after DCC serves upon the United States, together with all necessary supporting documentation, a Request for Termination stating that DCC has:

a.    made the payment required by Paragraph 15 and any accrued Interest imposed by this Consent Decree;

b.    paid in full any Stipulated Penalties imposed by this Consent Decree; and

c.    completed all other requirements of this Consent Decree.

72.    Following receipt by the United States of DCC's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether DCC has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with EPA, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

73.    If the United States, after consultation with EPA, does not agree that the Decree may be terminated, DCC may invoke Dispute Resolution under Section X of this Decree. However, DCC shall not seek Dispute Resolution of any dispute regarding termination until 120 days after service of its Request for Termination.

-27-

## XVIII. SIGNATORIES/SERVICE

74.     Each undersigned representative of DCC, EPA, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

75.     DCC agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified DCC in writing that it no longer supports entry of the Decree.

76.     DCC agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XIX.   INTEGRATION

77.     This Consent Decree, including the Appendices identified or incorporated herein and any Attachments that are identified in the Appendices, constitute the final, complete, and exclusive agreement and understanding between the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than the Appendices, which are attached to and incorporated in this Decree, the Attachments identified in the Appendices, and submittals that are subsequently submitted and approved pursuant to this Decree, no other

-28-

document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XX.    FINAL JUDGMENT

78.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and DCC.

## XXI. RETENTION OF JURISDICTION

79.    This Court shall retain jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and for the purpose of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, to the extent that this Consent Decree provides for resolution of disputes by the Court.

## XXII.    APPENDICES

80.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the Extended Warranty, Catalyst Inspection and Replacement, and Owner Reimbursement Program;

"Appendix B" is the OBD Recall and Catalyst Inspection and Replacement Program;

"Appendix C" is the Owner Notification Program;

"Appendix D" is the Emission-Related Defect Monitoring and Reporting Protocol; and

"Appendix E" is the Supplemental Environmental Project.


SO ORDERED AND APPROVED in accordance with the foregoing this 28ᵗʰ day of

February , 2005

United States District Judge

**Signature Page – United States v. DaimlerChrysler Corporation**

FOR PLAINTIFF, UNITED STATES OF AMERICA

Dated: 12/16/05

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
10th & Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dated: 12/20/05

KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

Dated: 12/20/05

R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

Dated: 12/20/01

KEITH V. MORGAN, D.C. Bar #422665
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20530

Dated: 12-20-2005

THOMAS CARROLL, Bar # 388593
Senior Attorney
Environmental Enforcement Section
United States Department of Justice
10th & Pennsylvania Avenue, N.W.
Washington, D.C. 20530

**Signature Page – United States v. DaimlerChrysler Corporation**

*Phyllis P Harris*                    Dated: *12-1-05*
PHYLLIS P. HARRIS
Principal Deputy Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20004


_____    Dated:_____
WILLIAM L. WEHRUM
Acting Assistant Administrator
Office of Air and Radiation
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20004


_____    Dated:_____
MERRYLIN ZAW-MON
Director, Compliance and Innovative Strategies Division (6403J)
Office of Transportation and Air Quality
Office of Air and Radiation
U.S. Environmental Protection Agency
1310 L Street, N.W.
Washington, D.C.  20004


_____    Dated: _____
THOMAS M. BALL
Program Manager
Compliance and Innovative Strategies Division
U.S. Environmental Protection Agency
2000 Traverwood
Ann Arbor, MI 48105


_____    Dated:_____
ADAM M. KUSHNER
Director
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
1200 Pennsylvania Avenue, N.W.
Mailcode 2242A
Washington, D.C. 20004

-32-

**Signature Page – United States v. DaimlerChrysler Corporation**

_____    Dated:_____
PHYLLIS HARRIS
Principal Deputy Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

_____    Dated: 12-14-05
WILLIAM L. WEHRUM
Acting Assistant Administrator
Office of Air and Radiation
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

_____ Dated: 11/21/05
MERRYLIN ZAW-MON
Director, Compliance and Innovative Strategies Division (6403J)
Office of Transportation and Air Quality
Office of Air and Radiation
U.S. Environmental Protection Agency
1310 L Street, N.W.
Washington, D.C. 20004

_____    Dated: 11/21/05
THOMAS M. BALL
Program Manager
Compliance and Innovative Strategies Division
U.S. Environmental Protection Agency
2000 Traverwood
Ann Arbor, MI 48105

_____    Dated: 12/19/05
ADAM M. KUSHNER
Director
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
1200 Pennsylvania Avenue, N.W.
Mailcode 2242A
Washington, D.C. 20004

**Signature Page – United States v. DaimlerChrysler Corporation**

Dated: 12-2-05

JACQUELINE ROBLES WERNER
Attorney
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Division
1200 Pennsylvania Avenue, N.W.
Mailcode 2242A
Washington, D.C. 20004

**Signature Page – United States v. DaimlerChrysler Corporation**

FOR DEFENDANT, DAIMLERCHRYSLER CORPORATION

DEBORAH L. MORRISSETT
Vice President, Regulatory Affairs
DaimlerChrysler Corporation
800 Chrysler Drive
Auburn Hills, MI 48326

Dated: December 2, 2005

PATRICK M. RAHER, D.C. Bar # 168542
Partner
Hogan & Hartson LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20006

Dated: 12/5/05

-34-